MERCHANTS' & MANUFACTURERS' NAT. BANK OF COLUMBUS, OHIO, v. GALBRAITH.

(Circuit Court of Appeals, Sixth Circuit. November 27, 1907.)

No. 1,661.

BANKRUPTCY—PROVABLE CLAIMS—ACCOMMODATION NOTE.

A bankrupt who conducted a private bank gave permission to the president of a national bank who had no account with the bankrupt to draw checks on his bank to the amount of $25,000. These checks, by an arrangement between the two banks, were cleared through the clearing house by the national bank, which charged them to the bankrupt and credited them to the account of its president. Later the bankrupt gave his note for the amount and the president of the national bank gave to the bankrupt a corresponding note. *Held*, on the evidence, that the transaction was one for the accommodation of the president of the national bank individually, and not of his bank, and the latter was therefore entitled to prove its note against the bankrupt estate.

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

N. W. McCoy, for appellant.

Before LURTON and SEVERENS, Circuit Judges.

LURTON, Circuit Judge. This is an appeal from a judgment disallowing a claim against the bankrupt. The claim presented by the appellant was based upon a contract in these words:

"Columbus, Ohio, January 20, 1902.

"On demand after date, for value received, we jointly and severally promise to pay the Merchants' & Manufacturers' National Bank, of Columbus, or order, twenty-five thousand dollars, at its banking house in Columbus, O., with interest after date at the rate of 6 per cent. per annum until paid.

"Milton W. Strait.

"Credits:
"Int. pd. to April 30, 1902.
"Int. pd. to Oct. 31, 1902.
"Int. pd. to Apl. 30, 1903.
"Int. pd. to Oct. 31, 1903.
"Int. pd. to Apl. 30, 1904.
"Int. pd. to Oct. 31, 1904."

The defense against it was that it was accommodation paper made for the accommodation of the Merchants' & Manufacturers' National Bank, the creditor, now the appellant. Both the referee and district judge disallowed the claim as based upon no consideration, although the evidence in behalf of the bank was materially strengthened after the referee's ruling. The bankrupt, Milton W. Strait, carried on a small banking business at Columbus, Ohio, under the name of the "Franklin County Bank." This bank was not a member of the Clearing House Association of Columbus. The appealing creditor was a national bank doing business in the same city and was a member of the Clearing House Association. The latter bank by agreement undertook to "clear" checks drawn against Strait's bank, and had done so for a considerable time prior to the events now to be detailed. During the year 1903, William D. Park was the president of the national

bank and was regarded as a man of some means. Park and Strait were intimates. Strait was likewise a man of financial standing. Between September 8, 1900, and January 26, 1901, Park drew his three individual checks against the Franklin County Bank, aggregating $25,000. These checks with their indorsements were as follows:

Ex. A-1.            Columbus, Ohio, Sep. 8, 1900.
No. .... Ex. B.            Ex. A-1.  O. K. G.
{ 2 c Internal Revenue }
{ Documentary Stamp. }
                   Franklin County Bank.
Pay to M. W. Strait, or order,
Five thousand .................................................Dollars
$5,000.00.                        W. D. Park.
Counter Check.

Ex. A-2.            Columbus, Ohio, 1-15-1900.
No. .... Ex. C.            Ex. A-2. O. K. G.
{ 2 c Internal Revenue }
{ Documentary Stamp. }
                   Franklin County Bank.
Pay to W. D. Park, or order,
Ten thousand ....................................................Dollars.
$10,000.00.                   W. D. Park.
Counter Check.

Indorsed:

Pay to the order of any Bank or Banker, Merchants' and Mfrs.' National Bank, Columbus, Ohio.

                   Howard C. Park, Cashier.

Ex. A-3.            Columbus, Ohio, Jany., 26, 1901.
No. .... Ex. D.            Ex. A-3. O. K. G.
{ 2 c Internal Revenue }
{ Documentary Stamp. }
                   Franklin County Bank.
Pay to H. C. Park, Cas. ........................................ or bearer,
Ten thousand ....................................................Dollars.
$10,000.00.                   W. D. Park.
Counter Check.

Indorsed:

Pay to the order of any Bank or Banker, Merchants' and Mfrs.' National Bank, Columbus, Ohio. Howard C. Park, Cashier.

These checks were "cleared" by the Merchants' & Manufacturers' Bank, and the Franklin Bank became thereby debtor to the Merchants' & Manufacturers' Bank. Park had no account with the Franklin Bank, but drew the checks with the express consent of Strait. Strait's own story about the first of these checks was that:

"Mr. Park telephoned me for permission to clear a check of $5,000 on us for a few days and I told him he could."

The same telephonic request was made for permission "to clear" the two subsequent checks for $10,000 each. The plain import of the authority given to Park was that he might individually draw these several checks and that they would be paid in the usual course of clearing house business, however used by him. Were these checks drawn for the accommodation of Park individually or of the Merchants' &

157 F.—14

Manufacturers' Bank? The court below reached the conclusion that they were in fact "a bank transaction for the purpose of creating a fictitious asset intended to deceive the bank examiner, and that the note was substituted for the checks merely for the purpose of presenting it in better form than an overdraft." That the checks were used for the personal account of the drawer, William D. Park, is indisputably true. He testified that they were credited to one or the other of several deposit accounts with the Merchants' & Manufacturers' Bank standing in his name, either personally or as a fiduciary, and that he personally received the entire benefit. Strait does not deny this. He could not. He could know nothing about the actual use made of them by Park. That Park did not remember to which of his accounts they were credited is not strange. He testified some six years after the transaction. The books of the bank do not distinguish between deposits of money and checks. The deposit slips which would show this could not be found by the receiver. The books of the Merchants' & Manufacturers' Bank do, however, show that these checks were regularly charged up to the account of the Franklin Bank.

It is further shown that these checks as they were severally "cleared" were returned to the Franklin Bank along with other checks likewise cleared in ordinary course of business. The checks, when returned, were accompanied by the usual clearing house slips containing a list of checks cleared that day by the Merchants' & Manufacturers' Bank for the Franklin Bank. The checks and these slips were duly received by Strait, and both have been produced in evidence by him. The memorandum slips included these checks, and undoubtedly informed Strait that the checks had been paid or "cleared" by the Merchants' & Manufacturers' Bank in the usual course of clearing house business. The result of the transactions was to leave the Franklin Bank debtor to the Merchants' & Manufacturers' Bank to the amount of the checks. That fact accordingly appears on the books of that bank, and the account stood overdrawn until settled by the execution of Strait's note, the one here involved. Another consequence was that Park stood debtor to the Franklin Bank in the sum of $25,000. He had no deposit account in that bank, and the checks themselves were the only evidence of his indebtedness. This indebtedness stood in that shape until Park gave his note for $25,000 to the Franklin Bank, attaching these three checks to the same, with the memorandum styling them "collateral." Park's note is as follows:

No. 2,301.                                                               Due 1-21-02.
$25,000.00                                     Columbus, Ohio, Jany. 20, 1901.

On demand .............. after date, for value received we jointly and severally promise to pay Franklin County Bank, or order, twenty-five thousand ............... Dollars, at the Merchants' & Manufacturers' National Bank, of Columbus, in Columbus, Ohio, with interest after date at the rate of 6 per cent. per annum until paid.
2 cks of 10 M each                                              W. D. Park.
1 cks of 5 M each.

This note and the note of Strait are for identical sums and bear same date. Manifestly these facts plainly indicate that these checks were for the personal accommodation of Park and confirm his posi-

tive evidence to that effect.    The Merchants' & Manufacturers' Bank indisputably paid these checks and stand to lose the whole sum, unless the payment of the checks by it constitute the consideration for the note in suit.    Obviously Strait's note was made to close the overdrawn account of the Franklin Bank, as testified by Park.    That his note was given for a corresponding sum to close his indebtedness to the Franklin Bank, as testified by him, is corroborated by the appearance of the transaction on its face.    Against his positive testimony, and the inference to be drawn from the transaction as indicated by the checks and notes, is the very indefinite story of the bankrupt, Strait, that he made the note in suit only at the request of Park, and that Park made his note of like amount at the same time as an "indemnity" to protect against its payment.    Recurring to Strait's account of the making of his note, it is to be observed that he is disingenuous in his history of the matter.    He seems to wish the note to be regarded as a thing having no relation to the checks he had given Park permission to draw, and yet he does not say so.    He does not profess to say what either he or Park said about the matter.    Though much pressed to state the conversation which induced the making of the note in suit, he contents himself with saying that "it was given to put the accommodation in different form."    This is, as we can but read it, an admission that the note was given to square the overdrawn account of the Franklin Bank, a bank entirely owned by himself.    He nowhere denies that the note was given to close the overdrawn account of the Franklin Bank.    That the Merchants' & Manufacturers' Bank wished this overdrawn account to be closed is undoubtedly true.    That is what Park, its president at the time, says was his motive in asking for the note.    In a sense this was an "accommodation" to the bank, for it put the indebtedness of the Franklin Bank in better shape to pass the inspection of the bank examiner.    But that the overdrawn account of the Franklin Bank, the private bank of Strait, was the consideration for the note, Strait does not deny, and the question of consideration for the note must turn upon whether Park was individually given credit by the Merchants' & Manufacturers' Bank by a deposit of the checks to some one of his accounts.    That Strait should wish Park to pay the checks he had drawn against the Franklin Bank, checks which had been paid by the Merchants' & Manufacturers' Bank, is just what we should expect.    Accordingly we find Park saying that Strait pressed him to take up these checks, as he needed the money.    Being unable to do this, he proposed that the Franklin's overdrawn account should be settled by Strait's note, thereby giving him or his bank the further credit which would come from the closing of an overdraft and relieve him from any immediate demand for the money.    As a part of the arrangement he gave his own note for his own debt by reason of his checks on Strait's bank.    Interest payments were credited on this Park note corresponding to those credited upon Strait's note.    The evidence of both Park and Strait agrees substantially that Park himself paid the interest on Strait's note, and that in consequence of this corresponding credits were placed on Park's note; the consideration for the one credit being the credit on the other note.    Upon the whole evidence we cannot escape the conclusion that Park was the accommodated party, and that

the note in suit rests upon the consideration of the credit given to him by these checks in one or the other of his deposit accounts.

The judgment disallowing the claim must be reversed, and the case remanded, with directions to allow the claim. The costs will be paid by the trustee out of the funds in his hands.